# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

MELODY A. DELUNA,  ) Case No. CV 10-07136 (SH)
        Plaintiff, ) MEMORANDUM DECISION
    v. ) AND ORDER
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
        Defendant. )

      This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Plaintiff's Brief in Support of Complaint ["Plaintiff's Brief"];

1

Defendant's Brief), and the defendant has filed the certified transcript of record.

On January 29, 2008, plaintiff Melody DeLuna filed an application a period of disability or Disability Insurance Benefits. On the same date, plaintiff filed an application for Supplemental Security Income. Both applications alleged an inability to work since November 8, 2007, due to a broken ankle and severed ligaments in the right ankle. (See 1 Administrative Record ["AR"] 94-103, 115-25, 128-71). On February 26, 2010, an Administrative Law Judge ("ALJ") determined that plaintiff had the following severe impairments -- cervical and lumbar disc bulging with chronic strain, status post right ankle with debridement, and right shoulder strain -- but found that plaintiff was not disabled within the meaning of the Social Security Act. (See 1 AR 18-26).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see 1 AR 1-3 ), plaintiff filed this action in this Court.

Plaintiff challenges the ALJ's Decision denying benefits, alleging that the ALJ erred in rejecting plaintiff's subjective complaints of pain. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

## **DISCUSSION**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective testimony about her excess pain. In response, defendant argues that the ALJ provided valid reasons for finding plaintiff not fully credible.

Plaintiff testified that she lives alone in a rented RV, does limited driving, has a college degree, and did past work as an aesthetician and as a massage therapist. She testified that her ankle injury, her lumbar disc problem (she was scheduled to have an epidural), her cervical disc problem, and her entire right side, limited her ability to do work, even sedentary work. She testified she could not reach forward with her right arm, and that it hurt her shoulder to reach forward with her left arm. She testified that she was in pain all the time, and that she had complex regional pain syndrome. She testified she

was taking Ibuprofen, Tramadol (she had had problems with Vicodin), Cymbalta (ankle pain), and topical Ketaprofen (neck, shoulder, lower back and right ankle), and that taking such medications brought her pain to a manageable level (except on days when she did more activity, e.g., driving to a doctor's appointment [she could not drive on Tramadol because of impaired thinking]).

She testified her custom brace for her foot caused her to have rashes and pain. She testified that because of her pain she could sit for only 10 to 15 minutes at a time, could stand for only 5 minutes at a time, and could lift 5 to 10 pounds (but not often). When asked how she got through the day, she testified that in the morning she would do some physical therapy exercises, would then lie down for 20 to 30 minutes, and would spend the rest of the day lying on a couch with her feet elevated. She testified that during the day she would take walks for 5 to 7 minutes to help her back. She testified that she could do household chores in increments -- she could shop for groceries (a few items at a time), prepare meals, and make the bed. She testified that her doctor had requested a sympathetic nerve block for damage to her foot (which could not proceed because of her active Workers' Compensation case). (See 1 AR 48-53).

The ALJ found that plaintiff's "testimony was generally credible but not to the extent she alleged an inability to perform any work." (1 AR 23). The ALJ then stated: "Such allegation was not supported by the medical evidence or the functional capacity assessments of record." (Id.). After finding that plaintiff was able to perform light work (in accordance with the vocational expert's testimony)¹, id., the ALJ wrote the following:

---

¹ "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).
    However, the ALJ provided for a sit/stand option, and limited plaintiff to lifting or carrying no more than 5 pounds frequently and 10 pounds occasionally, to not keeping the neck in a fixed position at the end of the range of motion, to not engaging in any continuous movement of the neck at the end of the range of motion, to not repetitively pushing or pulling, and to not reaching above shoulder level. (See 1 AR 24, 54).

3

". . . [T]he claimant had two right ankle arthrosporic debridement surgeries, but she recovered well postoperatively. She wears an ankle brace and takes mild pain relief pain medication postoperatively. The objective orthopedic and neurologic findings were mild throughout the record. MRI scans of the cervical and lumbar spine showed mild disc bulging, but no evidence of stenosis or nerve root impairment. An electrodiagnostic study also showed very mild evidence of possible cervical radiculopathy. [¶] The claimant has been treated conservatively for complaints of neck, back, and right shoulder pain. A right shoulder x-ray was unremarkable. Most treating and consulting physicians did not impose any functional limitations on the claimant. At most her physicians limited her range of light work. Only the podiatrist limited the claimant to a range of sedentary work and that assessment is rejected. It is not supported by clinical evidence of a disabling foot or ankle impairment. Postoperative examinations and x-rays of the right ankle showed the claimant healed well. The treating physicians did not conclude that the claimant had any disabling orthopedic or neurological impairment. The claimant's current treatment is conservative. She wears an ankle brace and takes mild pain relief medication. The lack of significant ongoing treatment for severe pain undermined the claimant's credibility." (Id.).

While the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he found that plaintiff's "statements concerning the intensity, persistence and limiting effects are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Id.).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain. Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).

4

Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, substantial evidence supported the ALJ's finding that plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.[2] One reason given by the ALJ – that plaintiff has recovered well from her right ankle surgeries in February 2008 and December 2008 -- was supported by evidence in the record. (See 1 AR 21-22; 2 AR 341-45 [In a report dated September 18, 2008 (approximately seven months after the first ankle surgery), Dr. Phillip Kwong stated that x-rays of plaintiff's right ankle show "no gross abnormalities"]; 2 AR 332-34 [In a report dated October 7, 2008, Dr. Kwong, after noting bony fragments imbedded in fibrocartilage of plaintiff's right ankle, found "no gross instability of the ankle ligaments"]; 2 AR 402-03 [In a report dated December 23, 2008 (two weeks after the second ankle surgery), Dr. Leslie Levy, a podiatrist, wrote that plaintiff "is doing well"]; 2 AR 513-14 [In a report dated January 8, 2009, Dr. Levy wrote that plaintiff has "good range of motion of her ankle in all fields" and that "[d]uring the day she does not take her pain medication"]; 2 AR 509-10 [In a report dated February 26, 2009, Dr. Levy wrote that plaintiff has increased range of motion and decreased swelling]; 2 AR 349-63 [Following an examination of plaintiff on March 25, 2009, Dr. Albert Simpkins, a medical consultant, wrote that "[e]xamination of the right ankle reveals no gross abnormalities"]; 2 AR 399-401 [In a report dated October 5, 2009, Dr. Levy wrote that

---

[2] The Court will not consider reasons for finding plaintiff not fully credible (see Defendant's Brief at 4-5) that were not given by the ALJ in the Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

5

plaintiff is doing well with her rebuilt brace]; 2 AR 397-98 [In a report dated October 30, 2009, Dr. Levy wrote, "We have her on her Motrin and she is currently on Ultram, which seems to be adequate enough to control her pain and sympatmotology."].[3][4]

Moreover, another reason given by the ALJ – the mild objective orthopedic and neurological findings -- was supported by the record. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) .

As noted by the ALJ (see 1 AR 21-22, 24), x-rays of plaintiff's right ankle and right knee on November 8, 2007 (following plaintiff's slip and fall at work) were normal (see 1 AR 176-84 [Encino/Tarzana Regional Medical Center treatment records (plaintiff was diagnosed with a right ankle sprain and right knee contusion)]; an electro diagnostic evaluation by Dr. Robert Henry on January 31, 2008 revealed a "mildly prolonged right tibial H-wave latency" and the "possibility of a mild right S-1 radiculpathy" (see 1 AR 185-90); an MRI of plaintiff's lumbar spine and cervical spine on February 4, 2008 revealed minimal bulging discs at L4-5 and L-5-S1 associated with small annular tears and minimal bulging discs at C5-6 and C6-7, but no evidence of focal disc herniation or central canal stenosis (see 1 AR 191-98); Dr. Arthur Harris, an orthopaedic surgeon who

---

[3] Contrary to plaintiff's assertion (see Plaintiff's Brief at 11), Dr. Levy's statement in her report dated June 18, 2010 that plaintiff "will need future surgery" (see 2 AR 592-99) does not contradict the ALJ's finding that plaintiff recovered well from her right ankle surgeries. Dr. Levy did not specify what kind of surgery plaintiff will need. Moreover, Dr. Levy's statement does not bear directly on the issue of whether plaintiff recovered well from her surgeries.

[4] Although plaintiff takes issue with the ALJ's statement that plaintiff "takes mild pain relief medication postoperatively" (see Plaintiff's Brief at 11-12), plaintiff's testimony that she takes Tramadol and took Vicodin does not mean she did not recover well after her ankle surgeries. In any event, both Tramadol and Vicodin can be prescribed for moderate to severe pain. See Johnson v. Astrue, 628 F.3d 991, 994 n.2 (8th Cir. 2011); www.Drugs.com.

treated plaintiff from March 2006 to May 2008 (see 2 AR 199-300), diagnosed plaintiff with cervical spine strain, cervical disc bulging at C5-6, contusion and straining injury of the right shoulder girdle, right lumbar radicular syndrome, lumbar disc bulging at L4-5 and L5-S1, and contusion and straining injury of the right pelvis; and he found "satisfactory range of motion in plaintiff's right shoulder without any signs of impingement and tenderness and limited range of motion in her neck and back, but no evidence of any neurologic deficits (sensory, motor or reflex changes) in the upper extremity (see 2 AR 200-01, 204-06, 209-11, 214-16, 219-21, 223-25, 227-29, 232-34, 239-40, 244-45, 249-51, 258-60, 263-65, 277-79, 283-84, 294-97); x-rays of plaintiff's right ankle on September 18, 2008 showed "no gross abnormalities"; and Dr. Kwong's examination on October 7, 2008 revealed "no gross instability of the ankle ligaments" (see 2 AR 332-34, 341-45); Dr. Simpkins' examination of plaintiff on March 25, 2009 revealed tenderness and slightly limited range of motion in the cervical spine and lumbar spine, right shoulder and right ankle, but no gross abnormalities of the right elbow, hips, right knee, and right ankle; and he diagnosed plaintiff with chronic cervical sprain/strain superimposed upon 1-2 mm disc protrusions at C-5 and C6-7, chronic right shoulder strain, chronic lumbrosacral sprain/strain superimposed upon 3 mm disc protrusion at L4-5 and 4 mm disc protrusion at L5-S1 per MRI, status post right ankle arthoscopy times two including percutaneous gastrocnemius resection, and rule out complex regional pain syndrome (see 2 AR 349-68)[5]; MRIs of plaintiff's right ankle, cervical spine and lumbar spine on April 2, 2009 revealed no definite fracture or dislocation of the right ankle, mild stenosis at C3-4 and C4-5, small bulges at C5-6 and C6-7 without any evidence of stenosis, and small bulges at L4-5 and L5-S1 with annular tears (but without any

---

[5] Contrary to plaintiff's assertion (see Plaintiff's Brief at 12-13), the fact that Dr. Simpkins determined for purposes of California's Workers' Compensation that plaintiff was Temporarily Totally Disabled does not contradict the ALJ's finding about mild "objective orthopedic and neurological findings." See Desrosiers v. Sec. of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988).

evidence of stenosis) (see 2 AR 482-84); Dr. Alan Moelleken examined plaintiff in September and October 2009 and found that plaintiff had a limited range of motion in the cervical and lumbar spine, that her upper extremity and lower extremity motor functions were limited by pain, and that she had decreased range of motion in the right shoulder; and he diagnosed plaintiff with lumbar radiculopathy, cervical sprain/strain, right shoulder arthralgia, right hip arthralgia and possible early cervical myelpathy (see 2 AR 463-81).

Moreover, another reason given by the ALJ – the fact that most of plaintiff's treating and consulting physicians did not impose any functional limitations, or stated that she was limited to light work (see 1 AR 182-90, 2 AR 253, 261, 332-45, 464) -- was a sufficient basis for partially rejecting plaintiff's credibility. See Carmichael v. Commissioner, Social Security Administration, 533 F.3d 1155, 1161 (9th Cir. 2008); Johnson v. Shalala, 60 F.3d 1928, 134 (9th Cir. 1995).

Finally, another reason given by the ALJ – the "lack of significant ongoing treatment for severe pain" -- was supported by the record (see 1 AR 49-50 [plaintiff's testimony about her medications; 2 AR 513-14 [Dr. Levy's January 8, 2009 statement that "[d]uring the day [plaintiff] does not take her pain medication"] 2 AR 397-98 [Dr. Levy's October 30, 2009 statement that Motrin and Ultram "seem[] to be adequate enough to control [plaintiff's] pain and sympatmotology."]; 2 AR 273, 350, 370, 527, 534, 588 [plaintiff did not have any epidural injections from June 2005 to January 18, 2010]). See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(noting that the"unexplained absence of treatment for excessive pain" can serve as a reason for discrediting a claimant's complaint of pain).[6]

---

[6] Even assuming arguendo that the ALJ's finding that plaintiff was partially not credible based on her conservative treatment was not proper, as plaintiff contends (see Plaintiff's Brief at 14-15), the Court's determination above that the ALJ's other reasons for finding plaintiff partially not credible were proper renders such error harmless. See Carmichael v. Commissioner, Soc. Sec. Administration, 553 F.3d 1155,
(continued...)

8

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: May 16, 2011

/s/ Stephen J. Hillman

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE

---

[6] (...continued)
1162-63 (9th Cir. 2008).